UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
MONTANA JEWELRY, INC.,               :

                 Plaintiff,                 :

                                :             **OPINION AND ORDER**
        -against-                    :            11-CV-04875 (DLI) (SMG)

MARK RISIS, DANIEL RISIS, PICKLED :
DIAMOND LLC, and KIPITOK INC.,        :

              Defendants.           :

-------------------------------------------------------------- x
**DORA L. IRIZARRY, United States District Judge:**

       Plaintiff Montana Jewelry, Inc. ("Plaintiff") filed the instant action against Defendants Mark Risis ("Mark"), Daniel Risis ("Daniel"), Pickled Diamond, LLC ("Pickled Diamond"), and Kipitok Inc. ("Kipitok") (collectively "Defendants"), alleging violations of the Anticybersquatting Consumer Protection Act (the "ACPA"), 15 U.S.C. § 1125(d), and asserting additional claims for breach of contract, intentional interference with prospective economic advantage, and breach of fiduciary duty. (Amended Complaint ("Am. Compl."), Doc. Entry No. 3.) Defendants now move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiff opposes the motion. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

       Plaintiff sells jewelry. On or about October 25, 2010, Plaintiff entered into an oral agreement with Mark, Daniel, and Kipitok to create a website known as "signjewelry.com" so Plaintiff could sell its jewelry online. (Am. Compl. ¶¶ 12, 20-22.) Under the agreement, Mark, Daniel, and Kipitok agreed to: (1) obtain the signjewlery.com domain name; (2) register the

signjewlery.com domain name in Plaintiff's name; (3) host and manage the signjewlry.com website; (4) take photographs of Plaintiff's jewelry products and provide those photographs to Plaintiff; and (5) post photographs of Plaintiff's jewelry products on the signjewlry.com website. (*Id.* ¶¶ 22, 25, 91.) Additionally, in October 2010, Mark executed a document that stated the following: "This is to certify that the URL Signjewelry.com [domain name] is the property of Montana Jewelry Inc. and Michael and Galina Prober." (*Id.* ¶ 23.)

On or about October 25, 2010, Mark and Daniel registered the "signjewelry.com" domain name under their name with a registrar of internet domain names without Plaintiff's knowledge. (*Id.* ¶¶ 14-16, 18-19, 24, 26, 32-33, 47.) Between October 25, 2010 and June 30, 2011, Kipitok hosted and managed the signjewelry.com website. (*Id.* ¶ 22.) During this same period, Plaintiff generated revenue through the sale of its jewelry on the signjewelry.com website and Ebay.com and developed goodwill associated with the signjewlery.com name. (*Id.* ¶¶ 27, 42, 55, 84.)

On June 30, 2011, Plaintiff advised Mark, Daniel, and Kipitok that Plaintiff desired to have a new consultant, Brash Concepts, manage and host the signjewlery.com website. (*Id.* ¶ 28.) That same day, Brash Concepts also advised Daniel and Kipitok that Plaintiff desired to transfer the hosting and management of the signjewelry.com website to it. (*Id.* ¶¶ 29, 30.) Brash Concepts requested that Daniel unlock the signjewelry.com domain name and provide a valid FTP user name and password so that Brash Concepts could access the hosting area. (*Id.*) Also on June 30, 2011, Plaintiff learned that it was not the owner of record of the signjewelry.com domain name. (*Id.* ¶¶ 36-39.)

After receiving notice of Plaintiff's desire to change hosting companies, instead of transferring the signjewelry.com website to Plaintiff, Mark and Daniel shut down the website and removed photographs of jewelry products that previously had been posted. (*Id.* ¶¶ 34, 41,

2

43, 60, 63.) Mark and Daniel then demanded money from Plaintiff in exchange for the transfer of the domain name. (Am. Compl. ¶¶ 44, 50, 57, 71, 81.) The closure of the website shut down Plaintiff's business operations and caused Plaintiff to lose sales generated from its internet operations. (*Id.* ¶¶ 43, 63, 70.)

On or about July 8, 2011, Plaintiff's counsel wrote to Defendants and advised them that if the signjewelry.com domain name was not transferred to Plaintiff by July 11, 2011, Plaintiff would seek a temporary restraining order and preliminary injunction to prevent Defendants from controlling the domain name. (*Id.* ¶ 49.) Thereafter, Mark and Daniel provided certain passwords to Brash Concepts, but they failed to provide all of the information necessary to effectuate the transfer of the signjewelry.com domain name to Plaintiff, thereby further preventing Plaintiff from utilizing the website and obtaining business revenue through the internet. (*Id.* ¶ 65.)

From approximately June 30, 2011 to July 30, 2011, the signjewelry.com website was not operational. (*Id.* ¶ 71.) Ultimately, Plaintiff was able to resurrect its website with the assistance of Brash Concepts and its legal counsel. (*Id.* ¶ 66.) To date, however, Defendants have not provided Plaintiff with the photographs and images that Plaintiff purchased from Kipitok. (*Id.* ¶ 67.)

## DISCUSSION

Defendants argue Plaintiff's ACPA, breach of contract, intentional interference with prospective economic advantage, breach of fiduciary duty, attorney fees claims, and claims against Pickled Diamond should be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. Defendants also argue the Court should abstain from exercising jurisdiction over the action pursuant to the *Colorado River* abstention doctrine.

Finally, Defendants contend Plaintiff has failed to allege facts sufficient to pierce the corporate veil as to Mark and Daniel.

**A.  Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To determine whether dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate, "a court must accept as true all [factual] allegations contained in a complaint" but need not accept "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pled facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Id.* at 1950 (internal citations and quotation marks omitted).

**B.  Anticybersquatting Consumer Protection Act ("ACPA")**

Plaintiff asserts a cybersquatting claim pursuant to the ACPA against the two individual defendants, Mark and Daniel. The ACPA was enacted in 1999 to protect consumers and holders of distinctive trademarks from "cybersquatting," which "involves the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners." *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F. 3d 489, 493 (2d Cir. 2000). In pertinent part, the ACPA provides that "the owner of a mark" can hold another person liable in a civil action if that person:

4

>(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
>(ii) registers, traffics in, or uses a domain name that—
>
>>(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; [or]
>>
>>(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark . . . .

15 U.S.C. § 1125(d).

Thus, to prevail on a claim under the ACPA, the owner of a mark must demonstrate that: "(1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark." *Webadviso v. Bank of Am. Corp.*, 448 F. App'x 95, 97 (2d Cir. 2011) (citing 15 U.S.C. § 1125(d)(1)(a)); *Marshall v. Marshall*, 2012 WL 1079550, at *18 (E.D.N.Y. Mar. 30, 2012).

    1.    <u>Ownership of Mark</u>

Defendants contend, without much elaboration, that Plaintiff's ACPA claim fails because Plaintiff's allegations do not demonstrate that "signjewelry.com" and/or "Sign Jewelry" are Plaintiff's marks or business names. (Brief in Supp. of Mot. to Dismiss Pl.'s First Am. Compl. ("Defs. Mem.") at 5-6, Doc. Entry No. 9; Brief in Resp. to Pl.'s Mem. in Opp'n to Mot. to Dismiss Pl.'s First Am. Compl. ("Defs. Reply Mem.") at 3, Doc. Entry No. 14.) Defendants appear to suggest that Plaintiff's allegations do not demonstrate that Plaintiff is "the owner of a mark," which is a threshold requirement of the ACPA. 15 U.S.C. § 1125(d)(1)(A).

Ownership of a mark arises from a party's prior use of the mark to identify its goods or services in a given market. *See ITC Ltd. v. Punchgini, Inc.*, 482 F. 3d 135, 147 (2d Cir. 2007)

5

("[S]o long as a person is the first to use a particular mark to identify his goods or services in a given market, and so long as that owner continues to make use of the mark, he is entitled to prevent others from using the mark to describe their own goods in that market." (internal quotations and citation omitted)); *Am. Online Latino v. Am. Online, Inc.*, 250 F. Supp. 2d 351, 359-60 (S.D.N.Y. 2003), *opinion clarified by* 2003 WL 1842874 (S.D.N.Y. Apr. 2, 2003) (confirming that "[o]wnership rights [in marks] flow *only* from prior use" (quoting McCarthy on Trademarks and Unfair Competition § 16:18 (4th ed. 2002)) (emphasis in original)). The ACPA requires only that a plaintiff be the "owner" of a mark; it does not require the mark to be registered. 15 U.S.C. § 1125(d)(1)(A); *see also DaimlerChrysler v. The Net Inc.*, 388 F. 3d 201, 205 (6th Cir. 2004) ("A trademark need not be registered to be entitled to protection under [15 U.S.C. § 1125(d)].").

Here, Plaintiff alleges that it used the signjewelry.com name and website since October 2010 to sell its jewelry products, generated revenue by selling its jewelry products in interstate commerce under that name, and developed goodwill as a result. (Am. Compl. ¶¶ 42, 55, 84; Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the First Am. Compl. ("Pl. Mem.") at 11-13, Doc. Entry No. 11.) Accordingly, Plaintiff's allegations of prior use allow for the reasonable inference that Plaintiff is the owner of the mark.

2. Registration

Defendants also contend that Plaintiff's allegations that Mark and Daniel "registered" the signjewelry.com domain name are conclusory. (Defs. Mem. at 5; Defs. Reply Mem. at 5.) In doing so, Defendants rely on Plaintiff's admission that it has been unable "to ascertain with 100% certainly whether the domain name 'signjewelry.com' was registered in the name of Mark Risis, Daniel Risis, Pickled Diamonds LLC or Kipitok Inc." (Am. Compl. ¶ 16.)

Liability under the ACPA is triggered only when a party "registers, traffics in, or uses a domain name." 15 U.S.C. § 1125(d)(1)(A)(iii). "Although the term 'registers' as used in this section is not specifically defined, it has been interpreted to mean a person *who presents a domain name for registration . . . .*" *Hamptons Locations, Inc. v. Rubens*, 2005 WL 2436209, at *8 (E.D.N.Y. Sep. 30, 2005) (emphasis added); *see also Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1104-05 (C.D. Cal. 2009) ("As used in the statute, to 'register' means to register a domain name by submitting an application to a registrar.").

Plaintiff has alleged, among other things, that Mark and Daniel had personal involvement and primary responsibility for creating the website, hosting and managing the website, and shutting down the website after Plaintiff desired to terminate the business relationship. Indeed, Defendants' failure to turn over all information relating to the use of the website prevented Plaintiff's new consultant from managing it. Regardless of whose name the domain name was formally registered under, Plaintiff's allegations lead to the reasonable inference that Mark and Daniel applied for and presented the domain name to the internet registrar. Additionally, given that domain name registrars often maintain registration information on a private and anonymous basis, information concerning the registration of signjewelry.com probably involves facts outside of Plaintiff's possession or control. *See Arista Records, LLC v. Doe 3*, 604 F. 3d 110, 120 (2d Cir. 2010) (holding that *Twombly's* "plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, . . . or where the belief is based on factual information that makes the inference of culpability plausible" (internal quotation marks omitted)). Thus, Defendants' motion fails on this ground.

7

3.     Distinctiveness

Defendants contend, without citing any authority, that Plaintiff's ACPA claim fails for the additional reason that "[Plaintiff's mark] was not distinctive at the time of the domain name's registration, nor has it achieved that kind of distinctiveness at the present time." (Defs. Mem. at 6; Defs. Reply Mem. at 3.) In doing so, Defendants rely on Plaintiff's failure to allege that it used "signjewlery.com" or "Sign Jewelry" prior to the registration of the domain name.

Distinctiveness "refers to the inherent qualities of a mark," and thus, "[a] mark may be distinctive *before it has been used—when its fame is nonexistent*." *Sporty's Farm*, 202 F. 3d at 497 (emphasis added); *see also Courtenay Commc'ns Corp. v. Hall*, 334 F. 3d 210, 214 (2d Cir. 2003) (marks must either be "inherently distinctive" or "distinctive by virtue of acquired secondary meaning"). Thus, Plaintiff need not allege that its mark was distinctive at the time of the domain name registration by virtue of an acquired secondary meaning, provided that Plaintiff's mark was *inherently distinctive* at the time of registration. For the purposes of this motion, however, the Court declines to consider whether Plaintiff's mark is inherently distinctive because the classification of a mark "is a factual question and that question turns on how the purchasing public views the mark." *Courtenay Commc'ns Corp.*, 334 F. 3d at 214 (quoting *Lane Capital Mgm't, Inc. v. Lane Capital Mgm't, Inc.*, 192 F. 3d 337, 344 (2d Cir. 1999).

4.     Bad Faith Intent to Profit

Defendants further contend that Plaintiff's allegations do not demonstrate their bad faith intent to profit from Plaintiff's mark. According to Defendants, Plaintiff's allegations of "bad faith," in addition to being conclusory, center on a contractual dispute relating to the development of a website and, therefore, fall outside of the scope of the ACPA. (Defs. Mem. at 6-7; Defs. Reply Mem. at 3.)

8

To state an ACPA claim, Plaintiff must plead that Defendants "ha[d] a bad faith intent to profit from [Plaintiff's] mark." 15 U.S.C. § 1125(d)(1)(A)(i); *see also Sporty's Farm*, 202 F. 3d at 495 ("Congress enacted the ACPA to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners by prohibiting bad-faith and abusive registration of distinctive marks as internet domain names with the intent to profit from the goodwill associated with such marks." (internal quotations and citation omitted)). Additionally, "Congress intended the [ACPA] to make rights to a domain-name registration contingent on *ongoing conduct* rather than to make them fixed at the time of registration." *Storey v. Cello Holdings, LLC*, 347 F. 3d 370, 385 (2d Cir. 2003) (emphasis added). The statute lists several non-exhaustive factors[1] to assist courts in determining when a defendant has acted with bad faith. One of those factors is whether a defendant "[has] offer[ed] to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services." 15 U.S.C. § 1125(d)(1)(B)(i)(III).

Plaintiff has alleged that Mark and Daniel registered the signjewelry.com domain name in the name of Mark without Plaintiff's knowledge, shut down and closed the signjewelry.com website, demanded money from Plaintiff in exchange for the transfer of the domain name, and failed to provide all of the information and passwords that were necessary to effectuate the transfer of the domain name. (Am. Compl. ¶¶ 12-24, 34-44, 60-63, 70-73.) Although the nature of Plaintiff's cybersquatting allegations may differ from the typical cybersquatting scenario, these allegations are sufficient to infer bad faith.

Accordingly, Defendants' motion to dismiss Plaintiff's cybersquatting claim against

---

[1] As the Second Circuit has noted, courts are not limited to considering just the listed factors in the statute when making a determination of whether the statutory criteria have been met. *Sporty's Farm*, 202 F. 3d at 498-99. Instead, the factors are indicia that "may" be considered along with other facts. *Id.*

9

Mark and Daniel is denied.

C.     **Breach of Contract**

Plaintiff asserts a breach of contract claim against Kipitok, Mark, and Daniel. (Am. Compl. ¶¶ 90-97.) Under New York law, there are four elements necessary to establish a breach of contract claim: (1) the formation of a contract between the parties; (2) performance by the plaintiff; (3) failure to perform on the part of defendant; and (4) damages. *See Johnson v. Nextel Commc'ns, Inc.*, 660 F. 3d 131, 142 (2d Cir. 2011) (citations omitted). Defendants argue the breach of contract claim should be dismissed, because Plaintiff does not allege what term(s) of the contract Defendants allegedly breached. (Defs. Mem. at 14; Defs. Reply Mem. at 6.)

Plaintiff has pled adequately its breach of contract claim. First, Plaintiff alleged the existence of an agreement between the parties. Plaintiff contends that it entered into an oral agreement with Defendants that provided for Mark and Daniel to: (a) "obtain a domain name 'signjewlery.com' to be registered in the Plaintiff's name;" (b) "host the website;" (c) "manage the website;" (d) "provide photographs of Plaintiff's products;" and (e) "post the photographs on Plaintiff's website 'signjewlery.com.'" (Am. Compl. ¶¶ 20, 91.) In addition, Mark executed a document that provided, *inter alia*: "This is to certify that the URL Signjewelry.com [domain name] is the property of Montana Jewelry Inc. and Michael and Galina Prober." (*Id.* ¶ 23.)

Second, Plaintiff pled adequate performance under the agreement by alleging Plaintiff had paid Kipitok a $500 per month retainer fee and other charges for management of Plaintiff's website and $11,000 for photographs of Plaintiff's products. (*Id.* ¶¶ 58, 68.) Third, Plaintiff alleged that Defendants breached the agreement by claiming "upon information and belief" that Mark and Daniel had "registered the domain name 'signjewlery.com' in the name of Defendant

Mark Risis." (*Id.* ¶¶ 24, 62, 73.) Lastly, Plaintiff pled damages sufficiently by claiming loss of online-generated sales. (*Id.* ¶¶ 43, 71, 78.)

Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract claim against Kipitok, Mark, and Daniel is denied.

**D.     Intentional Interference With Prospective Economic Advantage**

Plaintiff asserts a claim for intentional interference with prospective economic advantage against Kipitok, Mark, and Daniel. (Am. Compl. ¶¶ 98-106.) To establish tortious interference under New York law, a plaintiff must show: "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach; and (4) damages." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F. 3d 281, 285 (2d. Cir. 2006) (quoting *Foster v. Churchill*, 87 N.Y.2d 744, 749-50 (1996)).

"[W]here the plaintiff and defendant are parties to a contract, and the plaintiff seeks to hold the defendant liable in tort, the plaintiff must prove that the defendant breached a duty 'independent' of its duties under the contract." *Wrap-N-Pack, Inc. v. Kaye*, 528 F. Supp. 2d 119, 124-25 (E.D.N.Y. 2007) (quoting *Carvel Corp. v. Noonan*, 350 F. 3d 6, 16 (2d Cir. 2003)); *see also Clark–Fitzpatrick, Inc. v. Long Island R.R., Co.*, 70 N.Y.2d 382, 389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated")). A "defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations. . . . Conversely, where a party is merely seeking to enforce its bargain, a tort claim will not lie." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995) (citing *Sommer v.*

*Fed. Signal Corp.*, 79 N.Y.2d 540, 552 (1992); *Bellevue S. Assocs. v. HRH Constr. Corp.*, 78 N.Y.2d 282, 293-95 (1991)).

Plaintiff has not pled sufficiently an intentional interference with prospective economic advantage claim, aside from its breach of contract claim. Plaintiff has not alleged a breach of any duty independent from the contract or conduct "separate and apart" from Defendants' failure to fulfill their contractual obligations. In pleading its tortious indifference claim, Plaintiff alleges Defendants registered Plaintiff's website in the name of Mark Risis and shut down the website causing all commerce to cease. (Am. Compl. ¶¶ 26, 43, 62, 63, 71.) These are the same actions constituting Defendants' alleged breach of the contract. Plaintiff's tortious interference claim is grounded in the parties' contractual relationship and Plaintiff has failed to allege in its complaint that, in the absence of the contract, Defendants owed any other duty to Plaintiff.

Accordingly, Defendants' motion to dismiss Plaintiff's intentional interference with prospective economic advantage claim against Kipitok, Mark, and Daniel is granted.

E.   **Breach of Fiduciary Duty**

Plaintiff asserts a claim for breach of fiduciary duty against Mark and Daniel. (Am. Compl. ¶¶ 107-15.) As a general rule, a "cause of action alleging breach of good faith is duplicative of a cause of action alleging breach of contract." *OHM Remediation Servs. Corp. v. Hughes Environmental Sys., Inc.*, 952 F. Supp. 120, 124 (S.D.N.Y. 1997). "This general rule is derived from the fact that '[u]nder New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract.'" *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, 2004 WL 1837349, at *4 (S.D.N.Y. Aug. 16, 2004) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F. 3d 73, 80 (2d Cir. 2002)). "As a result, most courts 'faced with a complaint brought under New York

law and alleging both breach of contract and breach of a covenant of good faith and fair dealing [have] dismissed the latter claim as duplicative.'" *Id.* (quoting *Alter v. Bogoricin*, 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997)).

Plaintiff's breach of fiduciary duty claim is grounded in the same conduct as its breach of contract claim and Plaintiff does not assert any duty that Defendants owed to Plaintiff outside of the contractual relationship. Plaintiff alleges Defendants had a fiduciary duty to register the domain name "signjewlery.com" in Plaintiff's name and transfer that domain name to Plaintiff, and Defendants breached their fiduciary duties by "demanding money for the transfer of the domain name" to Plaintiff. (Am. Compl. ¶¶ 107-09.) The relationship between Plaintiff and Defendants was not one of fiduciaries, but rather a contractual relationship between a client and a web developer. "[T]he duty to act in good faith under a contract is not a duty separable from the contract." *Network Enters., Inc.*, 2004 WL 1837349, at *4.

Accordingly, Defendants' motion to dismiss Plaintiff's breach of fiduciary duty claim against Mark and Daniel is granted.

F.    *Colorado River* Abstention

Defendants argue that the Court should abstain from exercising jurisdiction over Plaintiff's action pursuant to the *Colorado River* doctrine, because there is a parallel state-court action involving similar parties and arising from the same facts and events as Plaintiff's complaint before this Court. (Defs. Mem. at 8-11). Under *Colorado River* abstention "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F. 3d 84, 100 (2d Cir. 2012) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800,

13

817-18 (1976)).  Defendants' argument is utterly meritless and borders on frivolous.

On October 16, 2011, Kipitok (here, a defendant) brought an action in the Supreme Court, State and County of New York, against Montana Jewelry (here, the Plaintiff), Galina Zass, and Michael Prober, alleging breach of contract for failure to pay all monies due under the contract, unjust enrichment, a request for accounting, and an imposition of a constructive trust. (Defs. Mem. at 9, Exh. A.)  The state court action was commenced less than a month before the federal action.  In both proceedings the defendants moved for dismissal in lieu of answering the complaints.  On October 18, 2012, the state court dismissed the complaint for failure to state a cause of action, with leave for plaintiff to file an amended complaint within thirty (30) days.  *See Kipitok v. Montana Jewelry, Galina Zass, and Michael Prober*, Index No. 110597-2011, Decision–Short Order, Oct. 18, 2012.  Kipitok did not file an amended complaint and the case remained dismissed.  As the state proceeding was terminated, Defendants' abstention motion is denied as moot.

**G.     Claims As To Pickled Diamond**

Plaintiff does not bring any causes of action against Pickled Diamond.  Further, Plaintiff alleges "Pickled Diamond LLC is named as a defendant by virtue of its agreement with Plaintiff dated October 21, 2010 and signed by Mark Risis," but asserts no allegations of wrongdoing against Pickled Diamond. (Am. Compl. ¶ 17.)  "It is well settled that where the complaint names a defendant in the caption but contains no allegations in the complaint indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."  *Jackson v. Cnty. of Nassau*, 2009 WL 393640, at *3 (E.D.N.Y. Feb. 13, 2009) (dismissing claims against two defendants as the complaint did not contain any allegations of wrongdoing by those defendants) (internal citations and quotations

14

omitted). Accordingly, the amended complaint is dismissed as to Pickled Diamond.

H.     **Piercing the Corporate Veil**

Defendants argue the claims brought against individual defendants Mark and Daniel must be dismissed, as Plaintiff has not "pierced the corporate veil." (Defs. Mem. at 16-17; Defs. Reply Mem. at 6.) "The doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation." *Graham Hanson Design LLC v. 511 9th LLC*, 2011 WL 744801, at *4 (S.D.N.Y. Feb. 24, 2011) (quoting *Matter of Morris v. N.Y. State Dept. of Taxation and Fin.*, 82 N.Y.2d 135, 140-41 (1993)).

Defendants' argument is without merit. "It is well-established that corporate officers can be held liable for the infringing acts of their corporations if they personally participated in the acts constituting infringement." *Lechner v. Marco-Domo Internationales Interieur GmbH*, 2005 WL 612814, at *6 (S.D.N.Y. Mar. 14, 2005) (collecting cases); *see also Audi AG v. Shokan Coachworks, Inc.*, 592 F. Supp. 2d 246, 282 (N.D.N.Y. 2008) (in ACPA action, finding "personal liability for trademark infringement . . . is established if the officer is a moving, active, conscious force behind [defendant corporation's] infringement" (quoting *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913-14 (E.D.N.Y. 1988))); *Graham Hanson Design LLC*, 2011 WL 744801, at *5 ("Owners or officers of a corporation may, of course, be held liable for their own infringement absent application of the veil piercing doctrine. . . . It is thus unnecessary to pierce the corporate veil before imposing personal liability for copyright infringement on a corporate officer.").

Plaintiff does not bring its ACPA or breach of contract claim against the individual defendants under a theory of piercing the corporate veil. Instead, Plaintiff repeatedly alleges

specific acts of wrongdoing by the individual defendants in their personal capacity. (*See, e.g.,* Am. Compl. ¶ 23 (Mark executed a document stating the URL signjewlery.com was the property of Montana Jewelry Inc., Michael Prober, and Galina Prober); *id.* ¶ 26 (Mark and Daniel registered the domain name in the name of Mark Risis); *id.* ¶¶ 31, 34, 35, 43, 63 (Mark and Daniel refused to transfer ownership of the website and shutdown the website down); *id.* ¶¶ 44, 50 (Mark and Daniel demanded money to transfer the domain name to Plaintiff).) Accordingly, Defendants' argument that Plaintiff's claims against the individual defendants should be dismissed for failure to plead facts sufficient to pierce the corporate veil is rejected.

I. **Attorney Fees**

Defendants argue Plaintiff's claims for attorney fees must be dismissed, because there is neither a statutory nor contractual basis for a claim for attorney fees. (Defs. Mem. at 15-16; Defs. Reply Mem. at 5.) Under the ACPA, "the Court has discretion to award reasonable attorneys' fees in exceptional cases." *Citigroup, Inc. v. Chen Bao Shui*, 611 F. Supp. 2d 507, 512-13 (E.D. Va. 2009) (citing 15 U.S.C. § 1117(a)); *see also Bogoni v. Gomez*, 2012 WL 5899240, at *1 (S.D.N.Y. Nov. 13, 2012) (collecting cases for standard of award of fees under the ACPA.) Accordingly, Defendants' motion to dismiss Plaintiff's claims for attorney fees is denied.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is denied as to Plaintiff's ACPA claim (First Claim), breach of contract claim (Second Claim), and respective claims for attorney fees, and is granted as to Plaintiff's intentional interference with prospective economic advantage (Third Claim) and breach of fiduciary duty (Fourth Claim) claims. In addition, the amended complaint is dismissed in its entirety as to Pickled Diamond, LLC.

SO ORDERED.

Dated: Brooklyn, New York
       March 26, 2013

/s/
DORA L. IRIZARRY
United States District Judge
